UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PAUL KADRI, | : |
|     Plaintiff, | :    CIVIL ACTION NO. |
| | :    3:13-CV-1165 (JCH) |
| v. | : |
| | : |
| GROTON BOARD OF EDUCATION, | : |
| KIRSTEN HOYT, ALISHA STRIPLING, | : |
| BEVERLY WASHINGTON | :    April 22, 2014 |
|     Defendants. | : |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 17)**

**I.     INTRODUCTION**

Plaintiff Paul Kadri ("Kadri") brings this suit against Defendants Groton Board of Education ("Board"), Kirsten Hoyt ("Hoyt"), Alisha Stripling ("Stripling"), and Beverly Washington ("Washington") (collectively, "Defendants"[1]). Kadri alleges defendants violated his Fourteenth Amendment right to due process and his First Amendment rights of access to courts and free association. He also alleges defamation under the laws of the State of Connecticut. See Complaint ("Compl.") at ¶ 1 (Doc. No. 1). Specifically, Kadri brings claims against the Board and Hoyt under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment right to due process. Id. at ¶¶ 2, 15, 18. He brings claims against the Board for violation of his First Amendment rights of access to the courts and free association. Id. at ¶¶ 20, 22, 25. Kadri also brings defamation claims against Stripling and Hoyt. Id. at ¶¶ 12-13.

---

[1] Kadri withdrew all claims against Washington on February 23, 2014 (Doc. No. 32), and the court subsequently granted Kadri's Motion on March 18, 2014 (Doc. No. 35). As such, all further references to "Defendants" do not include Ms. Washington.

1

Before the court is Defendants' Motion to Dismiss ("Def.'s MTD") (Doc. No. 17). Defendants argue that Kadri's Complaint has failed to state a claim upon which relief can be granted. Def.'s MTD at 1.

## II.     STANDARD OF REVIEW

To resolve a motion to dismiss under Rule 12(b)(6), the court must determine whether a plaintiff has stated a legally-cognizable claim by making allegations that, if true, would show he is entitled to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'" (quoting Rule 8(a)(2)). The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 559 U.S. 1, 5 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). The plausibility standard does not "require[] a complaint to include specific evidence [or]

factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the Iqbal Court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." 556 U.S. at 678 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

### III. FACTUAL AND PROCEDURAL BACKGROUND

Kadri filed his Complaint on August 13, 2013. In the Complaint, Kadri alleges multiple violations by the Board, Hoyt, and Stripling in connection with his termination as Superintendent of Groton Public Schools in early 2013.

Groton Public Schools hired Kadri as Superintendent in 2008 and extended his contract three times, most recently in September 2011. Compl. at ¶¶ 8-9. On May 4, 2012, the Board notified Kadri that it had received a complaint about his conduct, and voted, on May 7, 2012, to conduct an investigation. Id. at ¶ 15. Pending the results of the investigation, Kadri was placed on paid administrative leave. Id. Following the conclusion of the investigation, Kadri was "dismiss[ed] . . . by way of a letter dated

September 2012." ("September 2012 Letter").[2] Id. at ¶ 18.  The letter listed three reasons for the Board's consideration of Kadri's termination: (1) "[i]nsubordination against the rules and orders of the [B]oard"; (2) "moral misconduct"; and (3) "other due and sufficient cause." Id.  Each of these reasons references a ground for termination in Kadri's employment contract with the Board. Id.

Kadri's employment contract entitled him to appeal a termination decision to the Board, but Kadri instead, through his attorney, requested a hearing before an independent arbitrator because he was concerned the Board's review would not be impartial. Id.; Groton Board of Education and Paul Kadri Arbitration Agreement, October 25, 2012 ("Arbitration Agreement") at ¶ C.[3]  On October 25, 2012, Kadri signed

---

[2] There is some dispute about the September 2012 Letter.  First, Kadri disputes whether the September 2012 Letter, filed as Exhibit C to Defendant's Motion to Dismiss, is in fact the same letter discussed in his Complaint.  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp.") (Doc. No. 26) at 6.  In his Motion to Dismiss, Kadri notes that Exhibit C is a letter dated September 10, 2012, while the Complaint makes reference only to a letter dated "September 2012." Id.  However, Kadri's Complaint alleges that, in the letter, the Board gave three reasons for (consideration of) termination, and these three reasons are identical to the ones in the September 2012 Letter in Exhibit C.  Compl. at ¶ 18; September 2012 Letter at 1.  Given the September date and overlapping content of the letter referenced in the Complaint and that in Exhibit C, the court finds that these letters are one and the same.

Additionally, Kadri maintains the September 2012 Letter served to terminate his employment, while the Defendants assert the letter informed Kadri that his employment was under review.  Compl. at ¶ 18; Def.'s MTD at 12.  Exhibit C of the Defendants' Motion to Dismiss states, "[t]his letter is to notify you [Kadri] . . . that termination of your Contract is under consideration." September 10, 2012 Letter at 1.  While the court is required to accept all factual allegations in the complaint as true, the court "may consider any . . . statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  By discussing the September 2012 Letter (and its contents) in his Complaint, Kadri has incorporated this document by reference, and the court may therefore consider it.  From the letter, Kadri was not terminated by way of the letter, and the letter served to inform Kadri that the Board was considering his termination and the reasons therefore.  September 2012 Letter.

[3] As with the September 2012 Letter, Kadri, in discussing the terms of the Arbitration Agreement in his Complaint, see Compl. at ¶ 19, has incorporated that Agreement by reference, and the court may therefore consider it in this Ruling.

the Arbitration Agreement with the Board, and both parties "agree[d] to submit the present dispute to arbitration." Id. at ¶ 1. Under the agreement, the arbitrator's decision was "final and binding." Id. at ¶ 2.

Arbitration hearings were held over a three-month period in late 2012 and early 2013. Compl. at ¶ 21. The arbitrator interviewed nine Board witnesses, which generated hundreds of pages of testimony and exhibits. In the matter of the arbitration between Groton, CT., Board of Education and Paul [Kadri], Arbitration Decision and Award, March 4, 2013 ("Arbitration Decision") at 37.[4] While the arbitrator noted that Kadri "is a strong, committed administrator, . . . he has been an abusive, insensitive supervisor." Id. The arbitrator upheld Kadri's termination. Id. at 43 ("The Board of Education has demonstrated that Paul [Kadri] has engaged in conduct sufficient to justify termination under Section 9(C) of his contract of employment.").

Kadri alleges he was denied adequate notice and an opportunity to be heard throughout his termination proceedings, in violation of the Fourteenth Amendment's right to due process. Compl. at ¶¶ 15, 18. He claims he was placed on paid administrative leave without "adequate notice and an opportunity to be heard" and that after receiving the September 2012 Letter, the Board "refused to permit [him] adequate opportunity to rebut the charges, and failed to provide him with timely notice of the

---

[4] Kadri's termination is the central issue in this suit, and the arbitrator's findings are an integral part of the termination proceedings. As such, the court finds that the Arbitration Decision, in addition to being cited in the Complaint, see Compl. at ¶21, was also a document "known to the plaintiff and [something] upon which [he] relied in bringing the suit." ATSI Commc'ns, 493 F.3d at 98. Furthermore, because the arbitrator's findings are final and binding on the parties, Kadri is precluded from disputing any of the factual findings in the decision. See Matusick v. Erie Cnty. Water Auth., 11-1234, 2014 WL 700718, at *12 (2d Cir. Feb. 25, 2014) ("The *factual* findings supporting the hearing officer's ultimate conclusion—that [Plaintiff] had indeed committed the charged conduct . . . precluded [Plaintiff] from arguing otherwise at trial." (emphasis in original)). The court will thus consider the Arbitration Decision and its factual findings in this Ruling.

charges against him." Id.  He also alleges that, by submitting the dispute to arbitration, he was "forc[ed] . . . to relinquish his rights to turn to the courts for relief" in violation of "both his First Amendment right of access to the courts and his Fourteenth Amendment right to due process of law."  Id. at ¶ 20.  He further alleges that Hoyt and Stripling made defamatory statements about him, claiming Hoyt "declared openly in the presence of others that she did not believe [Kadri] should remain superintendent of the Groton [S]chools [and] . . . openly called into question his fitness to lead the school district."  Id. at ¶ 12.  He claims that Stripling made a claim to the Human Resources Director and the Board "that he had discriminated against her on account of her pregnancy and had engaged in conduct that constituted sexual harassment and had otherwise been abusive to her and to others."  Id. at ¶ 13.  Kadri also alleges that the Board's actions after his termination denied him his First Amendment right to free association.  Id. at ¶¶ 22, 25.

## IV.   DISCUSSION

The court first addresses Kadri's allegation that he did not receive "adequate notice and an opportunity to be heard" before being placed on paid administrative leave.  Compl. at ¶ 15.  It is well established that "[a]n employee who continues to be paid cannot sustain a claim for deprivation of property without due process even if relieved from job duties."  Thomas v. Bd. of Educ. of City Sch. Dist. of City of New York, 09-CV-5167 SLT RLM, 2011 WL 1225972, at *9 (E.D.N.Y. Mar. 29, 2011) (internal quotations and citations omitted) (collecting cases); see also O'Connor v. Pierson, 426 F.3d 187, 199 (2d Cir. 2005) ("[N]o court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties."); MacFall v. City of Rochester, 495 F. App'x 158, 160 (2d Cir. 2012) ((holding that

6

"plaintiffs . . . identified no property interest to which they had a legitimate claim of entitlement . . . . [because they] have at all times retained their full normal salary") (internal quotations and citations omitted)). Kadri's Complaint alleges he was placed on paid leave. Compl. at ¶ 15. Therefore, Kadri has failed to state a claim against either the Board or Hoyt for deprivation of his right to due process under the Fourteenth Amendment while being placed on administrative leave.

Kadri also alleges that, after receiving the September 2012 Letter, the Board "refused to permit [him] adequate opportunity to rebut the charges, and failed to provide him with timely notice of the charges against him." Compl. at ¶ 18. According to the September 2012 Letter, the letter served to "notify [Kadri] . . . that termination of [his] Contract [was] under consideration." September 2012 Letter at 1. The letter gave the specific reasons under the terms of the contract, as well as a detailed explanation of the complaints against Kadri. Furthermore, after reviewing the September 2012 Letter and the terms of his contract, Kadri—through his attorney—opted not to appeal his termination decision to the Board, but to request "appeal of [the Board's] decision [to] a one-member arbitration panel." Compl. at ¶ 19; see Arbitration agreement at ¶ C. He signed the Arbitration Agreement on October 25, 2012, and hearings proceeded over a three-month period from November 2012 to January 2013. Compl. at ¶ 21. After the hearings concluded, each side was given an opportunity to submit briefs. Arbitration Decision at 3.

"In order to prevail on a Section 1983 claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived

7

of that interest without due process." Jackson v. Roslyn Bd. of Educ., 652 F. Supp. 2d 332, 338 (E.D.N.Y. 2009).

Taking Kadri's allegations as true—including the documents listed above that the court reads as part of the Complaint—the court concludes that Kadri has been given adequate due process under the Fourteenth Amendment. The Court in Mathews v. Eldridge stated that the "essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it. All that is necessary is that the procedures be tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, to insure that they are given a meaningful opportunity to present their case." 424 U.S. 319, 348-49 (1976) (internal quotations and citations omitted). As detailed above, Kadri was given adequate notice of the consideration of his termination and the reasons therefore and, through the arbitration proceedings, had been given ample "opportunity to present [his] case." Id. at 349.

Furthermore, the Court in Cleveland Bd. of Ed. v. Loudermill articulated the process due to employees prior to termination. According to the Court, due process requires that an employee[5] receive "(1) oral or written notice of the charges against him, (2) an explanation of the employer's evidence, and (3) an opportunity to present his side of the story, before termination of employment." Holmes v. Town of E. Lyme, 866 F. Supp. 2d 108, 122 (D. Conn. 2012) (quoting Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 543 (1985)). The pre-termination hearing provides "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the

---

[5] The employees in Loudermill, like Kadri here, were also school district employees.

proposed action." Loudermill, 470 U.S. at 545–46.  As evidenced by the September 2012 Letter and the subsequent arbitration proceedings, Kadri has been given notice, explanation, and an opportunity to present his case.  The Arbitration Decision also carefully detailed the arbitrator's findings, assuring there were "reasonable grounds," Id. at 546, for the Board's termination decision.  Kadri has failed to state a claim against the Board and Hoyt because, even taking the allegations of the Complaint as true, the procedure afforded to Kadri following his receipt of the September 2012 Letter and subsequent arbitration proceedings complies with the process due him under the Fourteenth Amendment of the United States Constitution.[6]

Kadri further alleges violation of his First Amendment rights to access to the courts and free association.  Compl. at ¶¶ 20, 22, 25.  Kadri contends that agreeing to arbitration "forc[ed him] . . . to relinquish his rights to turn to the courts for relief[,]" and that his subsequent ban from school property upon his termination "affect[ed] his right to vote and to associate freely with other townspeople." Id. at ¶¶ 20, 22.  The court does not agree.

Kadri has not cited, nor has the court found, any case law supporting the contention that arbitration agreements are an unconstitutional violation of the First Amendment right of access to the courts.  Kadri was not "forced" to sign an agreement, as he, with the aid of a lawyer, requested the arbitration in lieu of the procedure

---

[6] The court also notes that Kadri's due process rights were not violated through the submission of the termination proceedings to arbitration. Though Kadri contends that by submitting the dispute to arbitration, he was "forc[ed] . . . to relinquish his rights to turn to the courts for relief" in violation his due process rights, Compl. at ¶ 20, he was in fact denied no such rights.  Under his employment contract, he was entitled to appeal any termination decision to the Board, but—with the aid of an attorney—Kadri requested independent arbitration instead. Compl. at ¶ 19.  Kadri was not forced into this decision, and, per the terms of the Arbitration Agreement, the decision would be "final and binding."  Arbitration Agreement at ¶ 2.

provided for in his contract.  Id. at ¶ 19; see Arbitration Agreement at ¶ C.  Furthermore, although "[t]he constitutional right of access is violated where government officials obstruct legitimate efforts to seek judicial redress," Whalen v. Cnty. of Fulton, 126 F.3d 400, 406 (2d Cir. 1997), the Board has not obstructed Kadri in seeking redress.  To the contrary, the Board accommodated Kadri's request to independently arbitrate the dispute instead of following the provisions of the original employment contract.  As discussed above, see supra at 9, Kadri was given adequate notice and opportunity to present his side of the case in an appropriate forum and was denied no rights to which he was otherwise entitled or had not himself voluntarily surrendered.

Similarly, the court does not find that Kadri's ban from school property "deprived [him] of the right to vote, to attend public hearing, and to petition for redress of grievances before his local government, in violation of the First Amendment."  Compl. at ¶ 25.  The Supreme Court has noted that "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."  Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 799-800 (1985).

Kadri has not cited, nor has the court found, any case law supporting the proposition that the First Amendment guarantees access to school grounds.  To the contrary, courts have found no constitutional violation where individuals have been banned from school property.  See, e.g., Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999); Nowacki v. Town of New Canaan, 3:12-CV-01296 JCH, 2013 WL 785355 (D. Conn. Mar. 1, 2013).  In Nowacki, this court found no violation of the plaintiff's First

Amendment rights to assembly, speech, and freedom to petition for redress of grievances when he was denied access to school property by the New Canaan Board of Education. Id. at *4-8. This court stated that "school officials 'have the authority and responsibility for assuring the parents and third parties conduct themselves appropriately while on school property.'" Nowacki, at *4 (quoting Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999)). Noting that schools are generally considered non-public fora, this court stated that "the government enjoys greater latitude . . . and may limit access or content based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." Nowacki, at *7 (quoting Byrne v. Rutledge, 623 F.3d 46, 54 (2d Cir. 2010)). Kadri's Complaint fails to plausibly allege that his ban from school property was not reasonable or viewpoint neutral.[7] Because Kadri has also cited no authority establishing a constitutional right to go onto school property, Nowacki, at *7, the court finds the Board did not violate his First Amendment right to assembly by banning him from school property upon his termination. This claim is thus dismissed.

Additionally, the court finds no violation of Kadri's right to vote. In a similar case in the Tenth Circuit, the court held that the plaintiff's right to vote was not violated by being banned from school property, because she "could have voted in person at the County Clerk's office or through the mail, via absentee ballot." McCook v. Spriner Sch. Dist., 44 F. App'x 896, 911 (10th Cir. 2002). Kadri here may also do the same.

Kadri's First Amendment right to petition for redress of his grievances has similarly not been violated. In McDonald v. Smith, the Supreme Court stated that the

---

[7] In his opposition to Defendants' Motion to Dismiss, Kadri in fact concedes that the ban was viewpoint neutral. Pl.'s Opp. at 25.

11

"right to petition is cut from the same cloth as the other guarantees of [the First] Amendment." 472 U.S. 479, 482 (1985). In Nowacki, this court noted that "[o]ne aspect of the right to petition is the right of access to the courts, and the right to petition for grievances may be exercised by filing a lawsuit and petitioning the courts for relief." Nowacki, at *8. As discussed above, see supra at 9-10, Kadri's First Amendment right of access to the courts was not violated through the Board's actions: he was given full opportunity to redress his grievances in an appropriate forum. For substantially the same reasons stated above, see supra at 9-10, the court does not find that Kadri's right to petition was violated. This claim is dismissed.

Finally, Kadri's state law defamation claims against Hoyt and Stripling are dismissed because the court has dismissed all claims over which it has original jurisdiction, and the interests of judicial economy, convenience, and fairness to the litigants do not warrant review of these claims in this forum. See Nerney v. Valente & Sons Repair Shop, 66 F.3d 25, 30 (2d Cir. 1995); Cunningham v. Lenape Reg'l High Dist. Bd. of Educ., 492 F. Supp. 2d 439, 451 (D.N.J. 2007); 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(3) the district court has dismissed all claims over which it has original jurisdiction. . . .").

## V.   CONCLUSION

For the reasons stated above, the court **GRANTS** Defendants' Motion to Dismiss (Doc. No. 17). Because only one complaint has been filed in this matter, the court affords Kadri the opportunity to file an amended complaint no later than May 12, 2014.

In the absence of filing an amended complaint, the court directs the Clerk to terminate the matter.

**SO ORDERED.**

Dated at New Haven, Connecticut this 22nd day of April, 2014.

                                                                         /s/ Janet C. Hall
                                                                         Janet C. Hall
                                                                         United States District Judge